UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,             Court File No. 21-cr-23 (NEB/LIB)

        Plaintiff,

v.                            **REPORT AND RECOMMENDATION**

LEVI BRANDIN JEROME,

        Defendant.

      This matter comes before the undersigned United States Magistrate Judge upon Defendant Levi Brandin Jerome's ("Defendant") Pretrial Motion for Suppression of all Evidence Obtained Pursuant to the Execution of a Search Warrant, [Docket No. 31]. This case has been referred to the undersigned Magistrate Judge for a report and recommendation, in accordance with 28 U.S.C. § 636(b)(1) and Local Rule 72.1. The Court held a motions hearing on May 10, 2021, regarding the parties' pretrial motions at which the parties requested the opportunity to submit supplemental briefing on the present motion. The supplemental briefing was completed on June 8, 2021, and this Court took Defendant's Pretrial Motion for Suppression of all Evidence Obtained Pursuant to the Execution of a Search Warrant, [Docket No. 31], under advisement on June 8, 2021.[1]

      For the reasons discussed herein, the Court recommends that Defendant's Pretrial Motion for Suppression of all Evidence Obtained Pursuant to the Execution of a Search Warrant, [Docket No. 31], be **DENIED**.

---

[1]The Court addressed the parties' pretrial discovery motions by separate order. [Docket No. 43].

## I.    BACKGROUND AND STATEMENT OF FACTS

### A.  Background

Defendant is charged with one count of robbery, in violation of 21 U.S.C. §§ 1151, 1153(a), and 2111, and one count of using, carrying, and brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(a)(A)(ii). (Indictment [Docket No. 1]).

### B.  Facts

The record presently before the Court indicates that on November 11, 2020, White Earth Police Department officers responded to and began investigating a robbery that occurred at the M&W store in Ogema, MN, within the boundaries of the White Earth Indian Reservation. (Tr. [Docket No. 44], at 24). As part of that investigation, on November 16, 2020, Investigator Brandon Larson ("Investigator Larson") with the White Earth Police Department filed two state court applications for search warrants to authorize the search of Defendant's apartment located in Detroit Lakes, MN (the "Apartment") and the tracking of Defendant's cell phone. (Gov't Ex. A; Gov't Ex. B).[2]

In the affidavit filed in support of the November 16, 2020, Apartment Search Warrant, Officer Larson indicated, in part, that he had responded to a robbery at the M&W store in Ogema, MN. (Gov't Ex. A at 2). Officer Larson further stated that the surveillance video showed a male wearing khaki pants, a black jacket, a baseball hat, and sunglasses had entered and robbed the store with an AR-type rifle (the "Rifle"). (See, Id. at 2–3). The man's face was concealed with a red bandana and a red t-shirt. (Id. at 3). Officer Larson further indicated that during his investigation,

---

[2] Government's Exhibit A is the warrant application, supporting affidavit, and warrant to search the Apartment, as well as, the return from that search, and Government's Exhibit B is the warrant application, supporting affidavit, and warrant to track Defendant's cell phone. At the Motions Hearing, the Government, without objection, offered the warrant applications, supporting affidavits, warrants, and return into evidence as Government's Exhibits A and B. (Tr. [Docket No. 44], at 18–19).

he interviewed Nakoya Keezer who stated that he had given Defendant a ride from Detroit Lakes to Ogema on November 11, 2020, and dropped Defendant off near the M&W store. (Id. at 4). Defendant was wearing a red bandana and black gloves, and he had a camouflage backpack. (Id. at 4–5). Nakoya also stated that when he subsequently picked Defendant up, again near the M&W store and near where evidence related to the robbery was found by law enforcement, Defendant "had a bunch of $20's, $5's and $1's," Defendant "said he had approximately $230" which he was carrying in the camouflage backpack, and Defendant "told Nakoya he robbed a guy to get the money." (Id.). Nakoya then drove Defendant to his Apartment in Detroit Lakes, Minnesota, and the two entered the Apartment. (Id. at 5).

Investigator Larson specifically requested that the warrant authorize a nighttime search. (Id. 5–6). Investigator Larson indicated that such authorization was necessary to prevent the destruction of evidence and to protect the searchers and the public. (Id.).

On November 16, 2020, the Honorable Gretchen D. Thilmony, District Court Judge for the State of Minnesota, Seventh Judicial District, County of Becker, determined that probable cause existed to support the issuance of the November 16, 2020, Apartment Search Warrant. (Id. at 7–9). Judge Thilmony further found "that a nighttime search outside the hours of 7 a.m. to 8 p.m. [wa]s necessary to prevent the loss, destruction, removal of the objects of said search, or to protect the safety of the searchers or the public." (Id. at 9). Thus, the November 16, 2020, Apartment Search Warrant authorized a daytime or nighttime search of the Apartment. (Id.). Judge Thilmony also determined that probable cause existed to support the issuance of the November 16, 2020, Tracking Warrant, which authorized the tracking of Defendant's cell phone. (Gov't Ex. B at 9–10).

3

Shortly thereafter, on November 16, 2020, law enforcement pinged Defendant's cell phone to determine its location, and they learned that Defendant's phone was in Devil's Lake, North Dakota. (Tr. [Docket No. 44], at 33). Prior to pinging his phone, law enforcement did not know where Defendant was located, and they assumed that reports from sources indicating that Defendant may be in "D.L." were referring to Detroit Lakes, Minnesota. (Id. at 32). The White Earth Police Department shifted its investigation from Detroit Lakes, Minnesota to Devil's Lake, North Dakota and proceeded to work with other agencies to locate Defendant in North Dakota. (Id. at 33). Law enforcement decided to wait until Defendant had been located to execute the search on his Apartment. (Id. at 33–34).

On November 23, 2020, several law enforcement officers travelled from Minnesota to Devil's Lake, North Dakota to search for Defendant, while other officers remained in Minnesota to execute the November 16, 2020, Apartment Search Warrant if necessary. (Id. at 36). At approximately 10:00 p.m. on November 23, 2020, Defendant was located and taken into custody. (Id. at 36–37). Law enforcement did not locate the Rifle at that time, nor did law enforcement locate any of the other evidence that was authorized to be searched for in the Apartment. (Id. at 37–38).

Upon learning that Defendant had been apprehended, law enforcement in Minnesota executed the November 16, 2020, Apartment Search Warrant at approximately 10:45 p.m. on November 23, 2020. (Id.; see also, Gov't Ex. A at 10). Evidence was found in the Apartment, including a black glove, pants similar to those worn by the robbery suspect, and a cartridge matching what an AR 15 would fire, but the Rifle and camouflage backpack were not located. (Tr. [Docket No. 44], at 39–40).

4

After the November 16, 2020, Apartment Search Warrant had been executed, law enforcement in Devil's Lake, North Dakota located the Rifle and camouflage backpack. (Id. at 40–41).

## II. DEFENDANT'S PRETRIAL MOTION FOR SUPPRESSION OF ALL EVIDENCE OBTAINED PURSUANT TO THE EXECUTION OF A SEARCH WARRANT [Docket No. 31]

Defendant moves the Court for an Order suppressing all physical evidence obtained from the execution of the November 16, 2020, Apartment Search Warrant. (Def.'s Mem. [Docket No. 46]). However, Defendant does not challenge the state court Judge's determination that probable cause existed to support the issuance of the November 16, 2020, Apartment Search Warrant; that the November 16, 2020, Apartment Search Warrant authorized a nighttime search of his Apartment, and that good cause existed for the authorization of a nighttime search; nor that the search of his Apartment on November 23, 2020, was executed within the parameters authorized by the November 16, 2020, Apartment Search Warrant. (See, Id.). Therefore, Defendant does not challenge the fact that the November 23, 2020, search of his Apartment was conducted pursuant to a valid search warrant. (See, Id.).

The record presently before the Court clearly indicates that the affidavit articulated a sufficient basis upon which to demonstrate that probable cause existed, as well as, a sufficient basis upon which to demonstrate a nexus between the evidence to be searched for and the Defendant's Apartment. For example, Officer Larson indicated in the affidavit that a witness, Nakoya Keezer, had informed law enforcement that he had dropped Defendant off near where the robbery occurred, that Defendant was wearing similar clothing as the robbery suspect was observed wearing in a surveillance video, and Defendant had a camouflage backpack with him. (See, Gov't's Ex. A at 2–5). The witness further informed law enforcement that he later picked

Defendant up near where the robbery occurred and where evidence of the robbery was found, that Defendant had "a bunch" of assorted bills, that Defendant stated he obtained the bills after "he robbed a guy," and that the witness and Defendant subsequently drove to and entered the at-issue Apartment. (See, Id. at 4–5).

In addition, the record presently before the Court indicates that good cause existed to support the authorization of a nighttime search due to the risk that evidence would be destroyed and to protect the safety of the searchers and the public. (See, Id., at 2–5; Tr. [Docket No. 44], at 37–38). The present record also indicates that the search was executed within the parameters authorized by the November 16, 2020, Apartment Search Warrant. (See, Gov't's Ex. A at 7–10).[3]

Accordingly, this Court concludes that the search of Defendant's Apartment on November 23, 2020, was executed pursuant to a valid search warrant. As already noted, Defendant does not offer any argument to the contrary. (See, Def.'s Mem. [Docket No. 46]).

Rather, the only argument for suppression raised by Defendant in the present motion is that the execution of a nighttime search was no longer reasonable at the time of execution due to a material change in circumstances since the issuance of the November 16, 2020, Apartment Search Warrant. (See, Id. at 2–7). Specifically, Defendant contends that good cause no longer existed to conduct a nighttime search and that the nighttime search of his Apartment was not reasonable because at the time of execution of the search warrant law enforcement knew that Defendant was then in custody in North Dakota and could neither destroy evidence nor commit additional robberies. (See, Id.).

---

[3] The Court notes that law enforcement executed the November 16, 2020, Apartment Search Warrant seven days after its issuance and returned the warrant eight days after its issuance. (Id. at 10). Thus, the warrant was executed and returned within the ten days permitted under Minnesota state law. Minn. Stat. § 626.15(a) (providing that a search warrant must be executed and returned within ten days of its issuance); see also, Fed. R. Crim. P. 41(e)(2)(A)(i) (providing that a warrant "must command the officer to . . . execute the warrant within a specified time no longer than 14 days").

Defendant purports to assert his present challenge under both the Fourth Amendment and Federal Rule of Criminal Procedure 41(e)(2)(A). For the reasons explained below, Defendant's challenge fails on both grounds.

Defendant first argues that evidence should be suppressed under the Fourth Amendment because the search of his Apartment was not reasonable. However, Defendant's constitutional argument is based on a false premise. "Rule 41 and the Fourth Amendment are not coextensive" and a search is not "*per se* unconstitutional because it was conducted after 10:00 p.m." United States v. Schoenheit, 856 F.2d 74, 77 (8th Cir. 1988); see also, United States v. Welch, 811 F.3d 275, 280 (8th Cir. 2016) ("A procedural violation is not per se an unreasonable search and seizure in violation of the Fourth Amendment."); United States v. Ferguson, 35 Fed. App'x 282, 283 (8th Cir. 2002) (citation omitted) ("Although a nighttime search can be particularly intrusive, a search is not unconstitutional simply because it is conducted at night.").

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and that "no warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. Amend. IV. "[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness.'" United States v. DE L'isle, 825 F.3d 426, 431 (8th Cir. 2016) (alteration in original) (quoting Riley v. California, 134 S. Ct. 2473, 2482 (2014)). "A search is reasonable if the officer has a valid search warrant or if the search fits within a specific warrant exception." Id.

Here, as set forth above, the search of Defendant's Apartment was conducted pursuant to a valid search warrant. The mere fact that Defendant was apprehended after that search warrant was issued and before it was executed did not retrospectively undermine the state court Judge's finding of probable cause. Nor did it do anything to retrospectively invalidate the nighttime

authorization for execution of the November 16, 2020, Apartment Search Warrant. Cf., United States v. Rucker, No. 11-cr-0255 (PJS/AJB), 2011 WL 6740328, at *1 (D. Minn. Dec. 21, 2011), aff'd, 545 Fed. App'x 567 (8th Cir. 2013) (finding a nighttime search to locate a handgun was justified by public safety concerns and did not violate the Fourth Amendment even where the application stated that "the suspects were in custody and the apartment had been secured and locked," but did not indicate law enforcement had conducted a protective sweep). Accordingly, the nighttime search of Defendant's Apartment, which was conducted pursuant to a valid search warrant, was reasonable under the Fourth Amendment. Therefore, Defendant's Fourth Amendment argument fails.

Defendant next argues that evidence should be suppressed under Federal Rule of Criminal Procedure 41(e)(2)(A) because good cause to conduct a nighttime search no longer existed at the time the warrant was executed. Defendant's statutory argument is also unavailing.[4]

---

[4] As a threshold matter, the Court notes that Federal Rule of Criminal Procedure 41(e)(2)(A) is not even applicable. "Rule 41 applies exclusively to federal searches." United States v. Spencer, 439 F.3d 905, 913 (8th Cir. 2006)." The present record indicates that the November 16, 2020, Apartment Search Warrant was applied for as part of an investigation conducted by state law enforcement into a violation of state law, and it was issued by a Minnesota state court Judge. (See, Gov't's Ex. 1; see also, Tr. [Docket No. 44], at 21–26). The present record does indicate that federal law enforcement agents were included in the investigation, however, nothing indicates the extent of involvement by federal agents, if any, in executing the search of Defendant's Apartment. (See, Tr. [Docket No. 44], at 33, 31–42; see also, Gov't's Ex. A). Although Minn. Stat. § 626.14 imposes restrictions on nighttime searches that are similar to those imposed by Fed. R. Crim. P. 41(e)(2)(A), "[f]ederal courts do not suppress evidence seized by state officers in conformity with the Fourth Amendment because of state law violations." United States v. Kelley, 652 F.3d 915, 917 (8th Cir. 2011) (quoting United States v. Applegate, 145 F.3d 976, 978 (8th Cir. 1998)); see also, United States v. Maholy, 1 F.3d 718, 721 (8th Cir. 1993) ("In determining whether evidence obtained solely by state officers is admissible in federal court in the first instance, it is usually irrelevant whether a state rule of criminal procedure was violated."). Thus, the record presently before the court does not establish sufficient federal involvement to render federal Rule 41 applicable. See, Spencer, 439 F.3d at 913 ("Here, the state court issued the search warrant for [the defendant's] property, and state law enforcement officers executed the search warrant. [The defendant] produced no evidence federal law enforcement personnel executed the search warrant, initiated or participated in the search, or had any intention of using the state investigation to charge [the defendant] in federal court. Consequently, Rule 41 is inapplicable."); see also, United States v. Artis, 919 F.3d 1123, 1130 (9th Cir. 2019) (citation omitted) ("The fact that federal agents were involved in conducting the search is a relevant consideration, but not sufficient on its own to trigger the rule's application. The search must be tied to an investigation into potential violations of federal law."); United States v. Jones, 471 F.3d 868, 871 (8th Cir. 2006) (citation omitted) (quoting United States v. McCain, 677 F.2d 657, 662 (8th Cir. 1982)) ("Rule 41 applies only where a warrant is sought by a federal law enforcement officer or where the search can otherwise be characterized as federal in character. Searches may be characterized as federal in character if there is significant federal involvement in the search."). Nevertheless, in an excess of caution, this Court will consider the merits of Defendant's statutory argument.

As noted above, Defendant does not challenge the initial November 16, 2020, Apartment Search Warrant authorization of a nighttime search, nor does he challenge that good cause existed for the authorization of a nighttime search. As such, it is undisputed that the state court Judge, for good cause, expressly authorized a nighttime search.

By its plain language, Federal Rule of Criminal Procedure 41(e)(2)(A) requires only that a warrant be executed in the daytime, "unless the judge for good cause expressly authorizes execution at another time." Rule 41 does not require any sort of a retrospective analysis to determine whether good cause for a nighttime search still exists at the time of execution when the search is conducted within the authorized parameters of a valid warrant. Because the state court Judge here, for good cause, expressly authorized a nighttime search, the requirements of Rule 41(e)(2)(A) were met. Thus, Defendant's statutory argument fails.

Moreover, the present record demonstrates that the circumstances as of the evening the November 16, 2020, Apartment Search Warrant was executed had <u>not</u> materially changed since its issuance. Despite Defendant's arrest in North Dakota, the justifications for a nighttime search remained. The state court Judge found "that a nighttime search outside the hours of 7 a.m. to 8 p.m. [wa]s necessary to prevent the loss, destruction, removal of the objects of said search, or to protect the safety of the searchers or the public." (Gov't's Ex. A at 9). The risk that evidence would be lost or destroyed remained at the time the warrant to search Defendant's Apartment was executed. Although Defendant was in custody, any of his associates could have destroyed or removed evidence upon learning of Defendant's apprehension. The risk of harm to the searchers or the public also remained. Although Defendant could not commit additional robberies while in custody, the AR-style Rifle had not yet been located when the search was executed, and it continued to pose a threat to the safety of the public. Because the circumstances had not materially

changed since the state court Judge had expressly and validly authorized a nighttime search, Defendant's statutory argument fails on additional grounds.[5]

Therefore, this Court recommends that Defendant's Pretrial Motion for Suppression of all Evidence Obtained Pursuant to the Execution of a Search Warrant, [Docket No. 31], be **DENIED**.

## III.    CONCLUSION

Based on the foregoing and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.  Defendant's Pretrial Motion for Suppression of all Evidence Obtained Pursuant to the Execution of a Search Warrant, [Docket No. 31], be **DENIED**, as discussed above.

Dated: June 29, 2021                                      s/Leo I. Brisbois
                                                         Leo I. Brisbois
                                                         U.S. MAGISTRATE JUDGE

**N O T I C E**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days

---

[5] Further, assuming solely for the sake of argument that federal Rule 41 was applicable and was violated, suppression would still not be warranted. "Noncompliance with Fed. R. Crim. P. 41 prerequisites does not automatically require the exclusion of evidence in a federal prosecution." Schoenheit, 856 F.2d at 76. The Eighth Circuit has held that where Rule 41 is violated, "suppression of the fruits of the search is not required absent a showing of (1) 'prejudice in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed,' or (2) 'evidence of intentional and deliberate disregard of a provision in the Rule." United States v. Burgard, 551 F.2d 190, 193 (8th Cir. 1977) (quoting United States v. Burke, 517 F.2d 377, 386–87 (2d Cir. 1975)). Here, no showing has been made that the search would not have occurred or would have been less abrasive if conducted during the daytime. There is also no evidence in the present record of any deliberate disregard for Rule 41. Accordingly, even if a purported violation of Rule 41 had occurred, suppression would not be warranted here.

after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.